FILED
SUPERIOR COURT
OF GUAM

2024 OCT 16 PM 3: 32

CLERK OF COURT

BY:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| RICHARD E. MOYLAN, | CIVIL CASE NO. CV0760-16 |
| Plaintiff/Counterclaim Defendant, | |
| vs. | |
| PASEO VIEW PROPERTIES, INC.; AXE MURDERER TOURS GUAM/BEACH HOUSE; JOHN DOE COMPANIES 1-5; AND JOHN DOES A-M. | **DECISION AND ORDER** |
| Defendants/Counterclaimants. | |
| AXE MURDERER TOURS GUAM/BEACH HOUSE; PASEO VIEW PROPERTIES, INC.; E.C. DEVELOPMENT, L.L.P., | |
| Third-Party Plaintiffs, | |
| vs. | |
| DOUGLAS MOYLAN, | |
| Third-Party Defendant. | |

This matter came before the Honorable Arthur R. Barcinas on April 25, 2024, for a hearing upon Defendant/Counterclaimant and Third-Party Plaintiff Axe Murderer Tours Guam/Beach House ("Defendant") Motion to Disqualify the McDonald Law Office ("Motion"). Defendant's counsel Attorney Jeffrey A. Cook was present via Zoom. Third-party Defendant Douglas Moylan was also present with counsel Attorney Joseph McDonald.

# INTRODUCTION

After many years of intensive litigation before the Honorable Judge Elyze M. Iriarte of the Superior Court, Judge Iriarte having been assigned this case since 2016, Moylan hired the McDonald Law Firm on or around December 14, 2023. This firm, the Defense asserts, is widely known to cause the automatic disqualification of Judge Iriarte. In the present case, the litigation has involved various attorneys and firms, and the court has invested significant judicial resources and time into processing this litigation before Judge Iriarte. Recently, Moylan hired the McDonald Law Firm, which led to Judge Iriarte's foreseeable and automatic recusal.

On March 7, 2024, Defendant filed a motion requesting the court to disqualify the McDonald Law Firm, asserting that the hiring of the McDonald firm was specifically intended to cause the recusal of Judge Iriarte. Defendant argues that the engagement of the McDonald's firm violates the rules of professional conduct and constitutes the prohibited practice of judge shopping. The court agrees and grants the motion for disqualification.

# BACKGROUND

In 2014, Attorney Joseph McDonald joined the Office of the Attorney General ("OAG"). Two years later, in 2016, the Honorable Elyze M. Iriarte took the bench. In August of the same year, the Plaintiff initiated a lawsuit against the Defendant concerning the usage of the property at issue in this case. Subsequently, in July 2017, the Defendant filed a counterclaim and a third-party complaint against then-private Attorney Douglas Moylan, whom Attorney Gary Gumataotao represented.

As far back as September 2018, the Guam Supreme Court disqualified Judge Iriarte from all criminal cases due to her familial relationship with Attorney McDonald. On January 2, 2023, Moylan was sworn in as Attorney General ("AG"), and Attorney Gumataotao

subsequently joined the OAG. Attorney William Pole then assumed representation of Moylan in this case. On December 15, 2023, Attorney Charles H. McDonald II, who also has a familial relationship with Judge Iriarte, filed an entry of appearance for the McDonald Law Office (MLO) on behalf of Moylan. The MLO consists of Attorneys Charles and Joseph McDonald.

On December 21, 2023, Judge Iriarte filed her disqualification from the case. On March 7, 2024, the Defendant filed a motion to disqualify the MLO, alleging that Moylan had hired the MLO to cause Judge Iriarte to recuse herself due to her close familial relationship with the McDonald attorneys. Moylan filed an opposition on February 9, 2024, and the Respondents filed a reply on March 15, 2024.

On June 25, 2024, before taking the matter under advisement, the Court sent a request to Judge Iriarte, to consider continuing on the case as the parties had agreed to waive the potential judicial conflict arising from the entry of the MLO. On July 25, 2024, Judge Iriarte filed a Supplemental Statement, stating that she is prevented from presiding over the case under 7 GCA § 6105(b) due to her close relationship with Attorney Joseph McDonald, her father's brother. She further noted that, while Attorney Charles McDonald is her second cousin, the small size of the MLO would make it unlikely, if not impossible, to ethically screen the matter from Attorney Joseph McDonald. Judge Iriarte further indicated that she does not believe waivers would resolve the conflict, as her recusal is necessary to uphold the appearance of propriety and maintain public confidence in the impartiality of the courts. The Court took this motion under advisement.

## DISCUSSION

Defendant moves the Court to disqualify the MLO from representing Moylan in this case, to sanction the MLO and Moylan, and to return the case to Judge Iriarte, based on

allegations that Moylan deliberately hired the MLO to influence Judge Iriarte to recuse herself from this case.

Since 2018, the Guam Supreme Court has held that "the current standard for attorney disqualification is whether an attorney's continued representation of a party or participation in an action violates or significantly risks violating the Guam Rules of Professional Conduct [('GRPC')]." *Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 20. The grounds for potential disqualification having arisen in 2023 upon the hiring of the MLO, the Court will apply the *Barrett-Anderson* standard and conduct its analysis under the GRPC.

The Court finds GRPC Rules 1.7, 1.16, 3.5, and 8.4 relevant to its analysis. Under GRPC Rule 1.7,

(a) "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) The representation of one client will be directly adverse to another client; or
(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) The representation is not prohibited by law;
(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) Each affected client gives informed consent, confirmed in writing.

Guam R. Prof. Conduct 1.7. GRPC Rule 3.5, which governs impartiality and decorum of the tribunal, states that "[a] lawyer shall not: (a) seek to influence a judge, prospective juror or other official by means prohibited by law; ... or (d) engage in conduct intended to disrupt a tribunal."

Guam R. Prof. Conduct 3.5(a),(d). GRPC Rule 8.4 further states that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ... [or] (d) engage in conduct that is prejudicial to the administration of justice ...." Guam R. Prof. Conduct Rule 8.4(a), (d). Finally, under GRPC 1.16, unless a lawyer is ordered to continue representation by a tribunal, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: ... the representation will result in violation of the rules of professional conduct or other law ...." Guam R. Prof. Conduct 1.16(a)(1),(c).

## I. Allegations of Forum Shopping

In the Motion to Disqualify, the Defendant claims that Moylan hired the MLO to intentionally disqualify Judge Iriarte in an act of alleged "judge-shopping." Defendant alleges that Moylan has made several previous attempts to remove Judge Iriarte from this case and has now hired the MLO knowing that Judge Iriarte would recuse herself due to her history of recusing from cases involving the MLO, given her close family relationship with the firm's principals. Defendant supports this theory with citations to three cases.

First, in *Grievance Adm'r v. Fried*, Defendant argues that "[i]t is unethical conduct for a lawyer to tamper with the court system or to arrange disqualifications, selling the lawyer's family relationship rather than professional services. The lawyer who joins a case as co-counsel, and whose principal activity is to secure a recusal, is subject to discipline." 570 N.W.2d 262, 267 (Mich. 1997). Second, Defendant cites *Price v. Reish*, stating that "an attorney cannot ethically accept representation in a pending case where the attorney knows that the case has been assigned to a trial judge with whom the attorney has an existing conflict, with the intent of

orchestrating the judge's recusal and obtaining a more favorable outcome from a different judge." 780 S.E.2d 745 (Ga. 2015). Finally, Defendant cites *Baptiste v. State*, emphasizing that "Rules of Recusal are not intended to allow parties and their lawyers to judge-shop and gain a trial advantage." 494 S.E.2d 530 (Ga. App. 1997).

In opposition, Moylan argues that the facts and the cases cited by Defendant do not support the judge-shopping allegations. Moylan contends that he did not know Judge Iriarte would disqualify herself before hiring the MLO. He points out that if this were his intent, he would have hired the MLO in 2019 when the firm was first formed. He also asserts his right to the counsel of his choice and a determination of Judge Iriarte's impartiality. Moylan further argues that Defendant has presented no evidence suggesting that the MLO is engaging in unethical behavior by leveraging family relationships rather than providing legal services. He claims that the MLO will handle all his personal legal matters moving forward, not just this case. Additionally, Moylan asserts that he would suffer substantial prejudice if his counsel is disqualified, while the Defendant would not be prejudiced if the MLO remains on the case.

In reply, Defendant asserts that Moylan hired the McDonalds as part-time prosecutors after he became Attorney General, makes no real effort to find alternative counsel, and has previously retained Attorney Curtis Van de Veld. Defendant argues that it is unreasonable for Moylan to claim he was unaware of the conflict, and even if he did not know, the MLO should have been aware of the conflict and had an ethical obligation to refuse representation, given that Judge Iriarte would recuse herself.

"Litigants do have a right to be represented by counsel, which ordinarily implies a right to lawyers of their choice. However, this right does not entail absolute freedom of choice."

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983). "The right to counsel of one's choice may be overridden when compelling reasons exist." *Id.* at 1263.

The exclusivity of the legal profession relies heavily on the ethical standards upheld by its members. Lawyers should not enter into client relationships where their services are sought for reasons other than their legal skills, such as providing the client with a de facto peremptory challenge to a judge. *Id.* at 1264. Doing so "creates the impression that, for a fee, the lawyer is available for sheer manipulation of the judicial system," which creates an appearance of professional impropriety and discredits the judiciary. *Id.* at 1265. Ethics committees in multiple states have found it unethical for a lawyer to accept employment in cases where a relative is representing an opposing party, acting as prosecutor, or presiding as a judge. *Id.*, n.33 (citing Comment, Ethical Concerns of Lawyers Related by Kinship or Marriage, 60 Or.L.Rev. 399 (1981)).

Outside of the GRPC, other courts have also identified certain objective factors to consider and balance in a disqualification analysis. *See UCP Int'l Company, Ltd. v. Balsam Brands Inc.*, 261 F.Supp.3d 1056, 1058-59 (N.D. Cal. 2017); *In re BellSouth Corp.*, 334 F.3d 941, 962-65 (11th Cir. 2003); *Robinson v. Boeing Co.*, 79 F.3d 1053, 1054-56 (11th Cir. 1996). The factors are: (1) the potential for manipulation or impropriety; (2) the judicial time invested; (3) the court's docket; (4) the delay in reaching decision; (5) the injury to the other party; (6) the fundamental right to counsel; and (7) the expense to the party that retained counsel. *Robinson*, 79 F.3d at 1055; *BellSouth*, 334 F.3d at 962-66. These factors are not exclusive, nor are they all necessary, and their weight varies according to the circumstances. *Balsam*, 261 F.Supp.3d at 1058-59. In these circumstances, the most relevant factors to the Court are the potential for

manipulation or impropriety, the judicial time invested, the injury to Defendant, and the fundamental right to counsel.

Given the facts, the Court agrees with the Defendant that Moylan's hiring of the MLO leaves the court with but one inescapable conclusion: that the hiring of MLO would have the impermissible result akin to improper forum shopping. The record indicates that Moylan has attempted to remove Judge Iriarte from this case at least four times on behalf of himself and Plaintiff Richard Moylan, despite the assertions by declaration to the contrary. Moreover, it would be nearly impossible for either Moylan or the MLO not to know that Judge Iriarte would recuse herself once the MLO entered the case. Judge Iriarte has a well-documented history of recusing herself from cases involving Attorney Joseph McDonald, a principal at the MLO. The MLO should have foreseen the outcome from experience alone, and both the MLO and Moylan should have known that the facts of this case would have compelled Judge Iriarte's disqualification by the obvious requirements of the Code of Judicial Conduct. At argument and by declaration, the MLO has described in great detail its compliance program to ensure compliance with the GRPC, a program the MLO alleges it has implemented to screen clients and potential conflicts to drive down risks to the firm. *See* Decl. of Joseph B. McDonald, at 3-4 (April 24, 2024). It is unclear how this argument is relevant to the Court's consideration, as the risk assessment system described in the Declaration seems more focused and targeted to address risks arising directly from the GRPC pertinent to avoiding client conflicts.

The declaration asserts that Moylan did not seek MLO's representation for the purposes of disqualifying Judge Iriarte. However, given the known risks and the obviously foreseeable results of MLO's entry into this case, the potential for manipulation or impropriety is too high to be disregarded.

Further, while Moylan argues that he has no alternative counsel based on the facts developed and the arguments made, without more, the Court remains unconvinced that he could not find another experienced litigator to represent him. Accordingly, the Court does not find that Moylan's fundamental right to counsel would be violated by the disqualification of the MLO in this case.

The Court also disagrees with Moylan's claim that the Defendants would face no prejudice by Judge Iriarte's recusal. Changing judges in a nearly decade-old case would be highly disruptive. As the court in *McCuin* noted, disqualifying a judge mid-case would impose undue burdens on the other parties and the judicial system. *McCuin,* 714 F.2d at 1263-64. This speaks to the factors of both the injury to the other party, and the judicial time invested.

Although Attorney Joseph McDonald stated that he advised Moylan that the MLO "would not accept an engagement for an improper purpose where the matter is in Judge Iriarte's court," the circumstantial evidence suggests that the MLO should have reasonably foreseen Judge Iriarte's recusal. As a result, the Court finds that the MLO representation, regardless of intent, would be violative of GRPC Rules 1.7, 1.16, 3.5, and 8.4 and would require MLO"s disqualification.

The Court concludes that the MLO could also be found to have violated GRPC Rule 3.5 by engaging in conduct that could be construed as intended to disrupt a tribunal, as their actions inevitably led to Judge Iriarte's recusal. Similarly, their conduct could also potentially be considered prejudicial to the administration of justice, as against GRPC Rule 8.4.

Even if Judge Iriarte's recusal was not their intent, the MLO still violated GRPC Rule 1.7 by representing Moylan despite a concurrent conflict of interest. The conflict arose due to

the MLO's personal interest in the case, namely their close familial relationship with Judge Iriarte.

The Court finds that, upon knowledge that the representation could violate the rules of professional conduct, the MLO's failure to withdraw from said representation constitutes a violation of GRPC Rule 1.16.

## **CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion to Disqualify, and **ORDERS** that the MLO be disqualified from this case and that the case be reassigned back to Judge Iriarte.

**IT IS SO ORDERED** _____OCT 1 6 2024_____ .

_____
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**